Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| ENIER CAMACHO RODRÍGUEZ<br><br>Apelante<br><br>v.<br><br>NYDIA LUZ RIVERA RIVERA<br><br>Apelado | KLAN202400139 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2021RF02018<br><br>Sobre: Divorcio-Ruptura Irreparable |

Panel integrado por su presidente, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 4 de abril de 2024.

### I.

El 16 de febrero de 2024, el señor Enier Camacho Rodríguez (señor Camacho Rodríguez o apelante) presentó un *Recurso de apelación* en el que solicitó que revoquemos una *Resolución* emitida el 9 de enero de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o Foro Primario), notificada y archivada en autos en igual fecha.[2] En el dictamen, el TPI acogió un *Informe social forense sobre custodia* (informe social) preparado por una Trabajadora Social de la Unidad Social de las Salas de Familia y Menores del TPI y adoptó las recomendaciones realizadas en dicho documento sobre la custodia y las relaciones paternofiliales del señor

---

[1] Véase Orden Administrativa OATA-2024-029 del 21 de febrero de 2024.
[2] Apéndice de la *Apelación*, Anejo I, pág. 1.

Camacho Rodríguez con respecto a dos (2) menores procreados con la señora Nydia Luz Rivera Rivera (señora Rivera Rivera o apelada).[3]

El 22 de febrero de 2024, emitimos una *Resolución* en la que le concedimos a la apelada hasta el 18 de marzo de 2024 para presentar su alegato en oposición.

El 15 de marzo de 2024, la señora Rivera Rivera radicó una *Solicitud de extensión de término* en la que solicitó que se le concediera un plazo adicional de veinte (20) días para presentar su alegato en oposición.

El 18 de marzo de 2024, emitimos una *Resolución* en la que le concedimos a la apelada como término final hasta el 26 de marzo de 2024 para presentar su alegato en oposición.

En cumplimiento con lo ordenado, el 26 de marzo de 2024, la señora Rivera Rivera presentó su alegato, en el que solicitó que confirmemos la decisión recurrida.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos procesales atinentes al mismo.

**II.**

El caso de marras tiene su génesis el 1 de noviembre de 2021, cuando el señor Camacho Rodríguez presentó una *Demanda* sobre divorcio por ruptura irreparable contra la señora Rivera Rivera.[4] Mediante esta, el apelante solicitó la patria potestad de sus hijos de forma compartida, la custodia compartida del menor AGCR y la custodia monoparental del menor AECR.

El 27 de diciembre de 2021, la apelada radicó una *Contestación a la demanda y reconvención* en la cual peticionó la patria potestad

---

[3] *Íd.*, Anejo VI, págs. 17-57.
[4] *Íd.*, Anejo IV, págs. 6-11.

compartida sobre los menores, la custodia compartida de AECR y la custodia monoparental de AGCR.[5]

Tras varios incidentes procesales, el 27 de marzo de 2023, la Trabajadora Social de la Unidad Social de Salas de Familia y Menores del TPI presentó una *Moción* referente a la custodia y a las relaciones filiales de los menores, en la que se acompañó el informe social.[6] Tras un pormenorizado estudio e investigación, se recomendó la custodia monoparental del menor AECR al apelante y la custodia monoparental del menor AGCR a la apelada. Pertinente a las relaciones filiales, se recomendó que AECR se relacione con la apelada de forma abierta sin pernoctar con ella y que AGCR se relacione con el apelante en fines de semana alternos de viernes a lunes.

El 29 de marzo de 2023, el Foro Primario emitió una *Orden* en la que le concedió a las partes un término de veinte (20) días para mostrar causa por la cual el tribunal no debía acoger el informe social.[7] A su vez, adoptó provisionalmente las recomendaciones.

Tras varios trámites procesales, el 30 de abril de 2023, el apelante radicó una *Moción sobre notificación de impugnación de informe social forense* en la que informó se proponía impugnar las recomendaciones del informe social a través de un perito.[8]

El 1 de mayo de 2023, mediante *Orden,* el TPI informó a las partes que debían coordinar tres (3) fechas disponibles durante el mes de agosto o septiembre para celebrar la vista de lectura e impugnación del informe social.[9] No obstante, ninguna de las partes cumplió con la *Orden.*

---

[5] *Íd.*, Anejo V, págs. 12-16.
[6] *Íd.*, Anejo VI, págs. 17-57.
[7] *Íd.*, Anejo VII, págs. 58-59. Archivada y notificada en autos el 30 de marzo de 2023.
[8] *Íd.*, Anejo X, págs. 63-66.
[9] *Íd.*, Anejo XI, pág. 67. Archivada y notificada en autos el 1 de mayo de 2023.

**Luego de ocho (8) meses**, el 8 de enero de 2024, la señora Rivera Rivera presentó una *Moción* en la que solicitó que el TPI acogiera las recomendaciones incorporadas en el informe social, debido a que el señor Camacho Rodríguez nunca coordinó las fechas para la celebración de la vista ni anunció perito alguno.[10]

Así las cosas, el 9 de enero de 2024, el TPI emitió y notificó una *Resolución* en la que acogió el informe social como un documento íntegro a la *Resolución* del Tribunal.[11]

El 24 de enero de 2024, el apelante radicó una *Moción de reconsideración a resolución emitida el 9 de enero de 2024* en la cual indicó que desconocía la importancia de los términos ordenados por el Tribunal y que ante el incumplimiento de su previa representación legal, se le debió notificar personalmente sobre su falta de diligencia.[12] Por otro lado, adujo que la *Resolución* del TPI representó una desestimación *de facto* por incumplimiento con las órdenes del Tribunal, en contra de velar por el óptimo bienestar del menor. Esto, dado que aseveró que la política pública del Estado es la custodia compartida, no la custodia monoparental. A su vez, arguyó que el informe social emitido por la Oficina de Trabajo Social del Tribunal no podía acogerse unilateralmente sin el crisol de las reglas evidenciarias y sin la celebración de vistas en su fondo, en contravención a su debido proceso de ley.

El 25 de enero de 2024, el Foro Primario emitió y notificó una *Orden* en la cual determinó No Ha Lugar a la reconsideración por entender que todos los términos transcurrieron sin que cumplieran con lo ordenado.[13] A su vez, consignó que las partes pueden acordar cambios atinentes a la custodia y llegar a un acuerdo sobre la misma.

---

[10] *Íd.*, Anejo XV, págs. 72-73.
[11] *Íd.*, Anejo I, pág. 1.
[12] *Íd.*, Anejo II, págs. 2-4.
[13] *Íd.*, Anejo III, pág. 5.

Inconforme, el señor Camacho Rodríguez presentó una *Apelación,* solicitando que se deje sin efecto la *Resolución* del Foro Primario, donde se acogió un informe social sin una vista evidenciaria. Le imputó al TPI los siguientes errores:

> PRIMER ERROR: ERRÓ EL HONORABLE TRIBUNAL A QUO AL ACOGER UN INFORME SOCIAL FORENSE, QUE RECOMIENDA LA CUSTODIA MONOPARENTAL DE UN MENOR A LA APELADA, SIN CELEBRAR UNA VISTA EVIDENCIARIA A PESAR DE QUE EL APELANTE HABÍA NOTIFICADO QUE IMPUGNARÍA EL REFERIDO INFORME Y SER ESTE INFORME PRUEBA DE REFERENCIA.

> SEGUNDO ERROR: ERRÓ EL HONORABLE TRIBUNAL A QUO AL ACOGER UN INFORME SOCIAL FORENSE QUE RECOMIENDA LA CUSTODIA MONOPARENTAL DE UN MENOR A LA APELADA, EN UN EJERCICIO DE ABUSO DE DISCRESIÓN AL NO NOTIFICARLE PREVIAMENTE AL PADRE COMPARECIENTE DE MANERA PERSONAL DE LAS CONSECUENCIAS DE INCUMPLIR CON LA ORDEN DEL TRIBUNAL, PRIVÁNDOLO ASÍ [D]E SU DÍA EN CORTE Y DE SU DERECHO A CONTRAINTERROGAR.

> TERCER ERROR: ERRÓ EL HONORABLE TRIBUNAL A QUO AL ACOGER UN INFORME SOCIAL FORENSE QUE RECOMIENDA LA CUSTODIA MONOPARENTAL DE UN MENOR A LA APELADA, SIN UN DEBIDO PROCESO DE LEY, A PESAR DE QUE ESTA MODALIDAD CONSTITUYE LA EXCEPCIÓN Y ATENTA EN CONTRA DE LA POLÍTICA PÚBLICA DEL ESTADO.

En esencia, el señor Camacho Rodríguez planteó que el TPI omitió informarle directamente sobre su incumplimiento y especificarle las sanciones que se le impondrían. Concluyó que el TPI lo sancionó por su incumplimiento al acoger el informe social en el que se recomendó otorgarle la custodia monoparental de su hijo AECR al apelante y la custodia monoparental del menor AGCR a la apelada. Arguyó que el TPI debió fundamentar razonablemente la concesión de la custodia monoparental de AGCR hacia la apelada. Además, adujo que la determinación del Foro Primario se fundamentó en prueba de referencia. Por ello, entendió que el Foro Primario debió celebrar una vista de impugnación del informe social. A su vez, reconoció su falta de diligencia en la tramitación del caso.

Por su parte, la apelada sostuvo que el debido proceso de ley que el apelante reclamó que se le vulneró no es absoluto, sino de naturaleza circunstancial y pragmática, a tenor con las

circunstancias presentes del caso. A su vez, planteó que la determinación del TPI en acoger el informe social merece deferencia por ser una decisión discrecional del TPI en la que no medió pasión, prejuicio, parcialidad, craso abuso de discreción ni error manifiesto. Aseveró que la determinación apelada se tomó en consideración al transcurso de más de ocho (8) meses sin que el señor Camacho Rodríguez realiza gestión alguna con relación a la impugnación del informe social. Esto, puesto que no informó el nombre de perito alguno ni sus credenciales, no sometió el informe pericial de impugnación, ni solicitó la celebración de vista, antes ni durante la contratación de su actual representación legal. Igualmente, esbozó que mediante la *Orden* emitida el 29 de marzo de 2023, el TPI apercibió al apelante sobre las consecuencias de no dar cumplimiento a lo ordenado. Asimismo, manifestó que el caso nunca estuvo inactivo ni paralizado por inacción del representante legal del señor Camacho Rodríguez, sino que el apelante nunca realizó las gestiones para impugnar el informe social.

Tras examinar los argumentos de ambas partes, procedemos a pormenorizar la normativa jurídica atinente a los errores planteados por el apelante.

**III.**

**A.**

En nuestra jurisdicción, el derecho a la patria potestad es naturalmente inherente a los padres, representa un derecho fundamental de estos y es una función que el Estado reconoce en los progenitores, en beneficio de los menores de edad. ***Torres Ojeda, Ex parte****,* 118 DPR 469, 472-473 (1987). La patria potestad se define como "el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su

emancipación". Artículo 589 del Código Civil de Puerto Rico, 31 LPRA sec. 7241.

Como resultado de la disolución del vínculo matrimonial, cuando los progenitores con patria potestad no pueden llegar a un acuerdo, los tribunales tienen la facultad para regular el ejercicio de la custodia y patria potestad de sus hijos. *Íd.*, sec. 6809; **Rivera Ríos, Ex parte,** 173 DPR 678, 682 (2008). Con el fin de proteger y salvaguardar el bienestar de los menores, en el ejercicio de su poder de *parens patriae,* los tribunales ostentan amplias facultades y discreción para atender este asunto revestido del más alto interés público. **Pena v. Pena**, 164 DPR 949 (2005). De esta forma, si un tribunal percibe un conflicto entre intereses ajenos y el mejor interés de los menores, debe resolver a favor de los menores. *Íd.*; **Ortiz v. Meléndez,** 164 DPR 16, 28 (2005).

La custodia es un atributo inherente de la patria potestad que impone la tenencia o control físico de los hijos no emancipados a los progenitores. **Torres Ojeda, Ex parte**, *supra*, a la pág. 477; **Jusino González v. Norat Santiago**, 2023 TSPR 47, 211 DPR __ (2023). A su vez, la custodia es ínsita al derecho a la intimidad y es un elemento de la vida privada y familiar, de modo que goza de protección constitucional. R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, Vol. II, San Juan: EJC Univ. Inter. PR, 2002, a la pág. 1307. Empero, existen determinadas circunstancias, en las que se permite separar la custodia de la patria potestad para garantizar el bienestar de los menores, como en la disolución del vínculo entre los progenitores. *Íd.*, a las págs. 1307-1308. En dicha eventualidad, los progenitores pueden establecer distintos acuerdos en relación con las necesidades de los menores de edad, a tenor con la multiplicidad de elementos relativos a las relaciones familiares. A saber, pueden acordar que uno de los progenitores ejerza la custodia exclusiva sobre todos los hijos; que cada progenitor asuma la custodia

exclusiva sobre algunos hijos mediante la custodia dividida, que ambos progenitores ejerzan la custodia compartida sobre todos sus hijos, o que un tercero asuma la custodia. *Íd.*, a la pág. 1309.

La custodia compartida se reconoce como "la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose con estos el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable". Artículo 602 del Código Civil, *supra*, sec. 7281. A diferencia, se reconoce como custodia exclusiva o monoparental cuando un solo progenitor posee la tenencia física de sus hijos. ***Jusino González v. Norat Santiago***, *supra.* Pese a que un progenitor ejerza la custodia exclusiva, no puede entorpecer o prohibir el contacto del otro progenitor con sus hijos, aunque se regulen las circunstancias y el modo del contacto. Artículo 606 del Código Civil, *supra*, sec. 7285.

Los progenitores pueden acordar voluntariamente la custodia compartida, siempre que tengan la disponibilidad, el firme propósito de asumir dicha responsabilidad y los recursos personales para hacerlo viable. *Íd.*, en la sec. 7282. Pues, en nuestro ordenamiento jurídico, la custodia compartida impera como primera alternativa ante la separación de los progenitores, para que los menores tengan la máxima relación con ambos. M. Fraticelli Torres, *Las instituciones familiares en el nuevo Código Civil*, en *El Código Civil de Puerto Rico de 2020: primeras impresiones*, San Juan: Fideicomiso para la Escuela de Derecho de la Universidad de Puerto Rico, 2021, a las págs. 100-101. No obstante, a falta de acuerdo entre los progenitores, el tribunal celebrará una vista para la adjudicación de la custodia provisional en atención al interés óptimo de los menores de edad. Artículo 603 del Código Civil, *supra*, sec. 7282. El criterio rector del interés óptimo de los menores de edad impone un peso decisional mayor sobre quienes toman decisiones relativas los menores, puesto que están revestidos

de protección especial. M. Fraticelli Torres, *op. cit.*, a la pág. 99. Así, al

momento del tribunal emitir una determinación sobre custodia, debe

considerar los siguientes criterios:

> (a) la salud mental de ambos progenitores y de los hijos;
> (b) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;
> (c) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;
> (d) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;
> (e) el historial de cada progenitor en la relación con sus hijos;
> (f) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;
> (g) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;
> (h) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;
> (i) la razón o los motivos de los progenitores para solicitar la custodia compartida;
> (j) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;
> (k) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;
> (l) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y
> (m) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos. Artículo 604 del Código Civil, *supra*, sec. 7283.

Por otro lado, la *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia*, Ley Núm. 223-2011, 32 LPRA sec. 3181 *et seq.*, tiene el propósito de procurar la protección y el bienestar de los menores de edad mediante criterios para la adjudicación de custodia. Ante la eventualidad de un divorcio, una separación o una disolución de una relación consensual, dicho estatuto promueve que el tribunal considere como primera alternativa la custodia compartida sobre los menores de edad, si es beneficiosa para estos, salvo prueba en contrario. *Íd.*, sec. 3182. Sin embargo, cuando surjan controversias entre los progenitores, el tribunal referirá el caso al trabajador social de Relaciones de Familia, quien está a cargo de realizar una evaluación y rendir un informe con recomendaciones al Tribunal. *Íd.*, sec. 3185. En tales circunstancias,

tanto el tribunal y como el trabajador social, deben considerar los siguientes criterios:

> 1) La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.
> 2) El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.
> 3) La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.
> 4) El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.
> 5) Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.
> 6) La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.
> 7) Que la decisión no sea producto de la irreflexión o coacción.
> 8) Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.
> 9) Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.
> 10) Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.
> 11) Si la ubicación y distancia de ambos hogares perjudica la educación del menor.
> 12) La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.
> 13) Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. [...]
> [14)] Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor. *Íd.*

Las recomendaciones emitidas por el trabajador social atinente a la custodia deben ser uno de los factores que el Tribunal debe considerar para realizar la determinación. *Íd.,* sec. 3186. Sin embargo, "el Tribunal siempre tendrá discreción judicial para la determinación y adjudicación de custodia, protegiendo siempre los mejores intereses y el bienestar de los menores a la luz de todas las circunstancias existentes". *Íd.*

No obstante lo anterior, la determinación del Tribunal sobre custodia no constituirá cosa juzgada. *Íd.,* sec. 3188. Por ello, si uno de los progenitores está en desacuerdo con la adjudicación de custodia, el Artículo 10 de la Ley Núm. 223-2011 dispone lo siguiente:

> **Cuando uno de los progenitores de un menor de edad entienda que deben darse cambios en la relación de**

**custodia del otro progenitor existente con sus hijos para garantizar el mejor bienestar de éstos, podrá recurrir al Tribunal y presentar una solicitud a dichos efectos. En la solicitud, el progenitor deberá expresar las razones sobre las cuales fundamenta la misma. [...]** *Íd.* (Énfasis nuestro).

**B.**

Un princípio rector de nuestro ordenamiento jurídico es que las controversias ante los tribunales deben resolverse de manera justa, rápida y económica. *In re Pagani Padró*, 181 DPR 517, 527 (2011); *Lluch v. España Service Sta.*, 117 DPR 729, 751 (1986). A esos efectos, "**el Tribunal de Primera Instancia tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente**". *In re Pagani Padró*, *supra*, a la pág. 529 (Énfasis nuestro). No obstante, este deber de los tribunales amerita complementarse con un mínimo de diligencia de las partes en velar por la tramitación justa, rápida y económica de los casos. *Íd.* Así las cosas, el efectivo funcionamiento del sistema judicial puertorriqueño y la más rápida disposición de los asuntos litigiosos requiere que los jueces y las juezas del Tribunal de Primera Instancia ostenten gran flexibilidad y discreción en el manejo y la tramitación de los asuntos judiciales. *In re Collazo I*, 159 DPR 141, 150 (2003); *Pueblo v. Vega Alvarado*, 121 DPR 282, 287 (1988). Por ello, "se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique". *In re Collazo I*, *supra*. En tal virtud, los jueces y las juezas del Tribunal de Primera Instancia tienen a su alcance múltiples métodos para controlar los procedimientos, hacer cumplir sus órdenes, más supervisar y controlar la conducta de los representantes legales que postulan ante ellos, sin que sea necesaria la intervención de un tribunal apelativo. *Íd.*, a las págs. 150-151. Pues, los foros apelativos no debemos intervenir con las determinaciones ni el criterio utilizado por el Tribunal de Primera

Instancia, excepto se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso de su discreción o error manifiesto. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

En el caso KLCE202200589, un panel hermano de este Tribunal se abstuvo de intervenir con la discreción del tribunal de instancia en un caso cuyas circunstancias procesales son similares al presente. En este, también, el Foro Primario acogió las recomendaciones contenidas en un informe social realizado por la Unidad de Investigaciones Especializadas del Departamento de la Familia, tras ocho (8) meses de silencio por parte de una progenitora que notificó su interés en impugnarlo.

**IV.**

En el caso que nos ocupa, el TPI emitió una *Resolución* en la que acogió el informe social presentado por la Unidad Social de la Sala de Familia y Menores de dicho foro. En este recurso, el señor Camacho Rodríguez planteó que el Foro Primario incidió en cometer tres (3) errores, los cuales discutiremos en conjunto por estar estrechamente relacionados entre sí. En síntesis, el apelante adujo que dicha determinación de acoger el informe social resultó ser una sanción tras transcurrir ocho (8) meses de emitida la *Orden* para coordinar la fecha de la vista de lectura e impugnación del aludido informe social, en contravención al debido proceso de ley que le asiste.

Tras un análisis objetivo, sereno y cuidadoso de los documentos que obran en el expediente ante nos, especialmente el informe social, concluimos que el TPI no cometió los errores señalados. De conformidad con los criterios antes pormenorizados sobre la adjudicación de custodia, la determinación apelada fue correcta en derecho. Ante las desavenencias entre el señor Camacho Rodríguez y la señora Rivera Rivera sobre la custodia de sus hijos, el TPI, en su poder de *parens patriae,* refirió el caso a una Trabajadora

Social de la Unidad Social de las Salas de Familia y Menores para que realizara una investigación social sobre la custodia de los hijos de las partes y emitiera un informe social.

La Trabajadora Social entrevistó, entre otras personas, al señor Camacho Rodríguez, a la señora Rivera Rivera y a ambos menores de edad. Se realizó una evaluación psicológica a cada progenitor, así como a los menores de edad. A su vez, se examinó el historial académico, ocupacional, de salud física y mental de las partes. Se desprende de los documentos que cada menor tiene un vínculo de apego con un progenitor, por ello, el apelante mantendría la custodia física del menor AECR y la apelada del menor AGCR. Además, surge del documento que la comunicación entre los progenitores es limitada y altamente conflictiva, situación que influenció en la inmersión de los menores en los conflictos parentales y provocó conflicto de lealtades. Asimismo, emana del informe social que, pese a que ambos progenitores poseen capacidad protectora y pueden ejercer adecuadamente su rol, deben mejorar sus patrones de interacción y comunicación, en bienestar de los menores de edad. Por otro lado, la Trabajadora Social encontró que las etapas de desarrollo en que se encuentran los menores y sus personalidades influyen en la forma en que interpretan el conflicto entre sus progenitores y sus maneras de reaccionar. Igualmente, la Trabajadora Social concretizó que el menor AGCR fue quien más se afectó por los conflictos entre sus progenitores, por lo que requiere mantenerse en un ambiente estable de residencia, institución académica, entre otros.

La Trabajadora Social puntualizó que, a pesar de que ambas partes tienen la capacidad para criar en conjunto, no necesariamente poseen la disposición ni el compromiso para hacerlo. Primero, el mayor conflicto entre los progenitores es su comunicación. Segundo, debido a la falta de sostenibilidad con los acuerdos provisionales establecidos entre ambos progenitores, la Trabajadora Social

consideró que la custodia monoparental resulta en mayor beneficio para los menores. Tercero, las profesiones y los horarios laborales de ambos progenitores impiden la custodia compartida. Cuarto, la ubicación de las facilidades educativas del menor AGCR se aproxima a la residencia de la señora Rivera Rivera, así como la residencia del señor Camacho Rodríguez con respecto al menor AECR.

Como resultado de sus hallazgos y tras emitir un pormenorizado informe social, la Trabajadora Social le recomendó que el Foro Primario adjudicarle la custodia monoparental del menor AECR al apelante y la custodia monoparental del menor AGCR a la apelada, dado que resulta en beneficio de los menores. Así las cosas y ante la inacción de las partes en coordinar fechas para celebrar una vista de impugnación del informe social, el TPI acogió las recomendaciones de la Trabajadora Social.

Adviértase que el Foro recurrido concedió **amplia oportunidad** al apelante para informar el nombre del perito que utilizaría para impugnar el informe social así como las fechas para calendarizar la vista de impugnación del mismo y nunca cumplió.

Tras **ocho (8) meses** de incumplimiento, el TPI acogió la recomendación del informe social, según apercibió a las partes.

Por lo cual, resulta menester resolver que el argumento del apelante de que el acoger el informe social constituye una sanción es improcedente.

A la luz de lo anterior, atisbamos que la determinación del TPI en acoger la recomendación de custodia monoparental y relaciones filiales razonablemente contempla el interés óptimo de cada menor de edad. Esto, fundamentado en la investigación social realizada por la Trabajadora Social, el ejercicio discrecional que le confiere la Ley Núm. 223-2011, *supra*, al Foro Primario sobre la adjudicación de custodia, todas las circunstancias particulares de las relaciones familiares en este caso, y los derechos que les asisten a las partes.

Así las cosas, declinamos intervenir con la discreción del TPI. Por todo lo anterior, determinamos que no se cometieron los errores señalados. Por ello, procede confirmar la determinación del TPI en acoger las recomendaciones emitidas en el informe social.

## V.

Por los fundamentos pormenorizados, se *confirma* la *Resolución* recurrida.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones